RECORD NO. 14-4020

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RYAN D. MOORE,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**OPENING BRIEF OF APPELLANT
RYAN D. MOORE**

Jane Moran
JANE MORAN LAW OFFICE
Cinderella Building at Third Avenue
Post Office Drawer 221
Williamson, WV 25661
(304) 235-3509
janemoran3@hotmail.com

*Counsel for Appellant*

March 13, 2014

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Table of Contents | i-iii |
| Points and Authorities | iv-vi |
| Statement of Subject Matter and Appellate Jurisdiction | 1 |
| Statement of Issues Presented for Review | 2 |
| Statement of the Case | 2 |
| Statement of Facts | 3-15 |
| Summary of the Argument | 15 |
| Standard of Review | 15-16 |
| LEGAL ARGUMENT | 17-36 |
| I. FUNDAMENTAL FAIRNESS AND DUE PROCESS REQUIRE STRICT ADHERENCE TO RULE 11 PROCEDURES BY THE COURT IN ACCEPTING A GUILTY PLEA | 17-19 |
| A. A Guilty Plea Results In Loss Of Rights To Constitutional Protection | 17-18 |
| B. Because Of The Loss Of Constitutionally Protected Rights It Is The Court's Duty To Ensure That A Guilty Plea Is Knowing And Voluntary | 18-19 |

i

II.    IT IS THE DUTY OF THE COURT TO
       DETERMINE WHETHER THE ACCUSED
       IS COMPETENT TO ENTER A KNOWING
       AND VOLUNTARY GUILTY PLEA                    21-23

       A.    The Court's Duty Is Spelled Out
             In Case Law And Procedural Rules        21

             1.    Case Law Requires Evidence
                   That A Defendant Was Competent
                   To Enter A Knowing Plea of Guilty   21-22

       B.    The Federal Rules Of Criminal
             Procedure Require The Court To
             Ensure A Defendant's Plea Is
             Knowing And Voluntary                    22

       C.    It Is The Court's Duty To Conduct
             Additional Testing Or Examination
             If It Has Any Reason To Question  A
             Defendant's Competency To Enter
             A Guilty Plea                            22

III.   THE COURT FAILED TO
       FULLY INQUIRE REGARDING
       APPELLANT'S COMPETENCY TO
       ENTER A GUILTY PLEA                           23-30

       A.    Appellant Presented Sufficient
             Evidence To Raise A Reasonable
             Doubt Regarding His Competency
             To Enter A Guilty Plea                   23-28

       B.    The Court Failed To Conduct
             Additional Testing Or Examination
             When It Had Reason To Question
             The Defendant's Competency To
             Enter A Guilty Plea                      28-29

IV.   APPELLANT ENTERED A GUILTY PLEA
      WITHOUT AN ADEQUATE SHOWING OF
      HIS COMPETENCY AND HIS PLEA
      MUST BE VACATED                                      30-33

      A.    The Court's Error Was Plain On
            The Face Of The Record                         30

      B.    Appellant's Guilty Plea Must Be
            Vacated Because Of The Court's Error           31-33


V.    IT IS CLEAR ON THE FACE OF THE RECORD
      THAT APPELLANT HAS BEEN DENIED
      EFFECTIVE ASSISTANCE OF COUNSEL                      33-36

      A.    Appellant Had A Right To Expect
            Effective Assistance From His Court
            Appointed Lawyers                              33

      B.    The Failure Of Appellant's Counsel To
            Investigate His Competency Was
            Ineffective Assistance Of Counsel              34-36

      C.    The Ineffective Assistance Appellant
            Received From His Counsel Prejudiced Him       36-37

Conclusion                                                 37

Request For Oral Argument                                  38

Certificate of Compliance                                  39

Certificate of Service                                     40

# POINTS AND AUTHORITIES

## CASES                                                              PAGE

Dukes v. Warden, 406 U. S. 250, 258,
32 L.Ed. 2d 45, 92 S. Ct. 1557 (1972)                                 18

Glover v. United States, 531 U. S. 198 (2001)                        36

Godinez v. Moran, 509 U. S. 389, 400 (1993)                          21, 23

Griffen v. Warden, 970 F.2d 1355, 1357 (4th Cir. 1992)               17

Henderson v. Morgan, 96 S. Ct. 2258, 426
U. S. 637, 650, 49 L.Ed.2 108 (1976))                                29

Johnson v. United States, 520 U.S. 461, 466-467 (1997)               16

Johnson v. Zerbst, 304 U. S. 464, 82 L.Ed. 2d
1461 58 S. Ct. 1019 (1938)                                           18

Kimmelman v. Morrison, 477 U. S. 365, 374 (1986)                     33

Lockhart v. Fretwell, 506 U. S. 364 (1993)                           36

Machi Broda v. United States, 368 U. S. 487,
493 (1962)                                                           20

McCarthy v. United States 89 S. Ct. 1166,
394 U. S,. 459, 466-467, 22 L.Ed 2d 418 (1969)                       18, 20, 31

McCoy v. Newsome, 953 F.2d 1252, 1262
(11th Cir. 1992)                                                     35

Miles v. Stainer, 108 F.3d 1109 (9th Cir. 1997)                      32

Pate v. Robinson, 383 U. S. 375, 378-386 (1966))                     23, 31

iv

Patton v. United States, 281 U. S. 276, 312,
74 L.Ed. 854, 50 S. Ct. 253 (1930)    18

Strickland v. Washington, 466 U. S. 668, 669 (1989)    34, 36, 37

United States v. Baldovinos, 434 F.3d 233, 239
(4th Cir.  2006)    35

United States v. Banks, 482 F.3d 733,
742 (4th Cir. 2007).    30

United States v. Christensen, 18 F.3d 822
(9th Cir. 1994)    29

United States v. Damon, 191 F.3d 561
(4th Cir. 1999)    21, 23, 32

United States v. Daugherty, 874 F.2d 213 (4th Cir. 1989)    16

United States v. General, 278 F.3d 389, 396
(4th Cir. 2002)    30

United States v. Hall, 977 F.2d 861 (4th Cir. 1992)    17

United States v. Murray, 176 F.3d 476 (4th Cir. 1999)    16

United States v. Rossillo, 853 F.2d 1062 (2d Cir. 1988)    32, 33

United States v. Truglio 493 F.2d 574 (4th Cir. 1974)    18, 32

Van Moltke v. Gillies, 332 U. S. 708 1948    20

Wady v. Heer, 384 F.2d 789 (6th Circ. 1967)    20

Williams v. Taylor, 529 U. S. 362 (2000)    36, 37

U. S. CONSTITUTION

U. S. Const. 6A                                          33


CODES

18 U.S.C. 1956(h)                                        1, 2

18 U.S.C. §3231                                          1

18 U.S.C. §3742                                          19

18 U. S. C. §3742(e)                                     16

21 U.S.C. §846                                           1, 2

18 U. S. C. §4241                                        22

28 U. S. C. §2255                                        19


FEDERAL RULES

Fed. R. Crm. Procd.  Rule 11                             19, 22, 31, 32

UNITED STATES SENTENCING GUIDELINES

USSG § 5C1.2(a)(4)                                       13

USSG § 3B1.1(a)                                          13

TREATISIES

Benchbook for U. S. District Court Judges,
6th Ed. Federal Judicial Center  March 2013,
Sec. 1.12B Mental Competency in Criminal Matters         22


ABA Stnd. Relating to Admn. of Crim. Justice.
Standard 4—4-1                                           34

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This is a criminal case originating in the United States District Court for the Southern District of West Virginia at Charleston. The District Court took jurisdiction over all issues raised in the Indictment under 18 U.S.C. 3231.

The Appellant entered a plea of guilty to two counts of a two count Indictment. He pled guilty to one count of Conspiracy for Money Laundering with the Intent to Promote and Carry On the specified unlawful activity, a violation under 18 U.S.C. 1956(h) He also pled to one count of Conspiracy to Distribute Oxycodone, a violation under 21 U.S.C. §846. (JA 197-202)

A Final Judgment was entered in the District Court on October 21, 2013. (JA 197) When no Notice of Appeal was filed, Appellant wrote the Clerk of the Court on December 23, 2013 expressing his intent to appeal the Court's judgment but complained that no action had been taken on his behalf to file an Appeal. (JA 203-204) On January 9, 2014, the Fourth Circuit Court of Appeals substituted his current Appellant counsel for his trial counsel. (JA 205-206)

## STATEMENT OF ISSUES
## PRESENTED FOR REVIEW

1.    The Court erred by failing to make a sufficient examination before accepting Appellants Guilty Plea of his competence to enter a plea of guilty after he showed a reasonable doubt regarding his competence.

2.    The failure of Appellant's counsel to investigate and present documents reflecting Appellant's mental and emotional condition relevant to the question of Appellant's competence before advising him to plead guilty was ineffective assistance of counsel.


## STATEMENT OF THE CASE

A two-count Indictment was issued by the Grand jury sitting in Charleston, West Virginia on December 18, 2012 charging from at least March 2010 to on or about April 27, 2012,  Ryan Moore and others later identified as Christopher Brooks, Jennifer Brooks and Keither Keiffer conspired to distribute oxycodone in violation of 21 U.S.C. §846 and to commit money laundering in violation of 18 U.S.C. §1956(h).

Appellant was arrested on the West Virginia Court's warrant and made an initial appearance in the District Court in the Middle District of Florida.  He was released on a personal surety bond and arraigned in the West Virginia Court on January 15, 2013.  He was again released on a personal surety bond.

On February 26, 2012 a Petition was filed by the U. S. Probation Office for Action on Conditions of Pre-trial Release. An addendum to the Petition was filed on March 25, 2013 reporting that the U. S. Probation Office had lost contact with the Appellant.

Appellant Moore was arrested in Tampa, Florida on April 8, 2013 upon his release from St. Joseph's Hospital in Tampa, Florida, where he had been confined and treated for his injuries in a car accident on March 22, 2013.

Ryan Moore was returned to West Virginia. On May 30, 2013 he appeared in the West Virginia Court and entered Guilty Pleas to both counts in the Indictment. He was sentenced on October 17, 2013 to a term of incarceration of 168 months and two three-year terms of Supervised Release to run consecutively.

## STATEMENT OF FACTS

An Indictment was returned against Appellant Ryan D. Moore to the Court in the Southern District of West Virginia on December 18, 2012. It charged Appellant with Conspiracy to Distribute Oxycodone, a Schedule II controlled substance and with Money Laundering. JA 8-10 An Order for his appearance and a warrant for his arrest were issued. JA 11, 16 Appellant Moore was arrested in Tampa, Florida on December 20, 2012. He made an initial appearance in the Court for the Middle District of Florida, where he was advised of the charge

3

against him and released on a $20,000 Personal Surety Bond.  He was not called upon to plead.  JA 12

Appellant Moore appeared in the Federal Magistrate Court, with counsel, in Charleston, West Virginia on January 15, 2013.  He entered a plea of Not Guilty and his trial was scheduled on February 25, 2013.  His appearance and condition of release were established.  JA 17-21   With the advice of counsel, Ryan Moore waived his right to be present for hearing or argument on any and all motions regarding his case prior to the actual commencement of his trial.  JA 29  The Magistrate Judge denied the Government's Motion for Detention and released Appellant on a $10,000 Personal Surety Bond.   JA 17 His trial date was subsequently continued to April 8, 2013.  JA 33

The U. S. Probation Office filed a Petition for Action on Conditions of Pre-trial Release on February 26, 2013 which alleged that Appellant had submitted a urine screen on February 1, 2013 which tested positive for cocaine.  JA 40-44  A warrant was issued for his arrest on February 26, 2013.

Counsel for Appellant filed a Motion for Leave to Withdraw on March 18, 2013, alleging that he had lost contact with his client during the period between February 28, 2013 and March 18, 2013.  JA 45-47   His Motion was denied on March 19, 2013.  JA 48   An Addendum to the Petition of the Probation Office was

filed on March 25, 2013 alleging that Appellant had failed to appear for required drug screens and the Office was unaware of his whereabouts.   JA 50

Appellant Moore was gravely injured in an automobile accident in Tampa, Florida on March 22, 2013.  He was hospitalized in a Tampa hospital until his arrest on April 8, 2013.  His injuries, as reported by the hospital, included a dislocated hip, lacerations and contusions to his leg, arm, and shoulder and internal areas around his stomach, collapse of his left lung, acute bleeding from the right side of his head consistent with a bleeding around his brain or in his brain, laceration of the right and left lobes of his liver, and a laceration of his spleen.  JA 246-247  His injuries resulted in removal of his spleen and a portion of his liver.  JA 246-247

When admitted for emergency care on March 22, 2013, Ryan Moore was experiencing difficulty breathing and becoming increasingly combative.  A tube had been placed to ease his breathing problems by the ambulance personnel before his admission.  This was replaced with a chest tube in the Emergency Room and he was heavily sedated.  JA 247  A drug screen at the time of his admission was positive for opiates, oxycodone, benzodiazepines and methadone.  JA 246 Hospital records reveal Ryan Moore was kept intubated until he regained sufficient alertness to be taken off the ventilator.  JA 247   He was in a coma state for approximately two weeks.  JA 185   The hospital reported that his neurological progressive

recovery was slow due to his increasing aggressiveness that required his restraint.[1]
JA 247

Appellant Moore told the Probation Officer that prior to the accident, he was prescribed Depakote for seizures and pain medication for neck and back injuries he suffered in a prior auto accident in 2000.  JA 246 The hospital reported Appellant had a pre-existing history of bi-polar disorder, which resulted in a psychiatric consult.  JA 247[2]

Additional medical records were obtained by the Probation Officer from Advanced Registered Nurse Practitioner Eloisa Abislaiman of Tampa Palms, Florida who treated Appellant Moore in January 2013 and on February 28, 2013 for mental health issues.   She prescribed Ritalin to address his ADHD and Depakote for impulse control.  JA 247

Appellant was arrested and detained upon his release from the hospital in Tampa, Florida on April 8, 2013,  on the warrant issued by the West Virginia Court on February 26, 2013.   He was brought to West Virginia where he entered into a Plea Agreement with the Government on May 17, 2013 – less than six weeks

---

[1]  Appellant reported to his Probation Officer that his memory of events surrounding the accident is not clear.  JA 247
[2]  The result of the hospital's psychiatric consult was not made available to the Court.

following Ryan Moore's release from the hospital, approximately eight weeks following the auto accident.[3]  JA 56-68

Appellant's plea was presented to the West Virginia Court on May 30, 2013. The Court inquired:

The Court:  Have you recently been under the care of a doctor, psychiatrist or other medical professional for any serious physical or emotional illness?

The Defendant:     Yes, Your Honor.

The Court:  Tell me about that, please.

The Defendant:     I was involved in a car accident and I've got some brain injury. They removed my spleen and part of my liver.  My lung collapsed and I've got multiple scars all over my body from it.  And from the head injury, it's kind of hard for me to read and write.

The Court:  When was this accident, Mr. Moore?

The Defendant:     Three months ago.[4]

The Court:  Okay.

The Defendant:     The U. S. Marshals actually took me from the hospital into custody.

The Court:  Alright.

_____

[3] The date on which the agreement was signed is not mentioned by the Court or counsel during the Plea Hearing on May 30, 2013.
[4] As stated above the accident occurred approximately eight weeks before the hearing.

The Defendant:      So…

The Court:   Are you taking any type of medications as a result of that accident?

The Defendant:      I was, for pain, but when I arrived here, they stopped giving it to me.  The only medication I take is Depakote and Blood Pressure medicine.[5]

The Court:   And how long have you been on those medications?

The Defendant:      A couple of years.

The Court:   During the time you have taken those, have you noticed any impact on your ability to reason and  to understand and to communicate?

The Defendant:      No.

The Court:   When was the last time you had any medicine at all?

The Defendant:      Today.

The Court:   And how long ago?

The Defendant:      This morning.

The Court:   Is your mind free and clear as you stand here at 1:34 this afternoon?

The Defendant:      Yes, Your Honor.

---

[5] The Probation Officer reported that when she met with the Appellant at the jail on July 11, 2013, he was prescribed Lisinopril and Hydrochlorothiazide for High Blood Pressure, Depakote for seizures, Celexa for Depression and Buspar for Anxiety.  JA 247

The Court:  And other than those two medicines, are you taking any alcohol, controlled substance or anything that might interfere with your ability to understand the proceedings here this afternoon?

The Defendant:    No, Your Honor.

The Court:  During the time that you have represented him, Mr. Lefler, have you had any reason whatsoever to question his competence?

Mr. Lefler:  Your Honor, I have not.  For the record, I will state that in meeting with Mr. Moore subsequent to this accident, I could note an affect in his speech and his, just his physical presentation.

Being aware of this, of the accident and the significant injuries that he received, I made it a point to try and make sure that he was, in my estimation, competent and able to understand our exchanges and provide me information.

And despite the, the difference that I can see in his presentation and especially, as I said, with the effect of his speech perhaps, I, I have found Mr. Moore capable of communicating with me, understanding what I've explained to him, asking him questions or giving me information, so that I do not have any significant concern that he is in any fashion unable to understand what he's doing in entering this plea or its terms.  I'm satisfied that he is, has the wherewithal to do that.

The Court:  I take it from everything that you have said thus far, when you communicate with him and you, when you question him, he is appropriately responsive.  Is that correct?

Mr. Lefler:  Yes, ma'am.

The Court:  All right.  Given those responses, Mr. Moore, I find that you're fully competent and capable of entering an informed plea.    JA 71-74

The Court made no further inquiry regarding Appellant's mental condition at the time of the Plea Hearing.  It made no inquiry regarding his mental status at the time he executed the Plea Agreement, the Waiver of his Appeal Rights and the Stipulation of Facts.[6]

Later in the hearing, the following colloquy occurred:

The Court:  Mr. Moore, have you received a copy of the Indictment that was filed against you?

The Defendant:    I believe so.

The Court:  I'm sorry?

The Defendant:    Is it the, the…

The Court:  The charging document, the Indictment.

---

[6] After being advised that Appellant did not recall seeing the Indictment returned against him and reading the Indictment to him, the Court asked:  "I know you do not recollect having read this Indictment previously, but you did not agree to plead guilty to Counts One and Two without knowing the nature of the charges against you, did you?" Defendant answered, "No, I knew the nature of the charge."  JA 84

Mr. Lefler:  Your Honor, Mr. Moore, I think, perhaps as a result of some of his injuries, doesn't have a specific recollection of that.  I will represent to the Court that Mr. Moore was provided a copy of the Indictment at the time of his initial appearance.  And I believe again we were provided it in discovery.

The Court:  All right.  Let's not rush through this.  If you have a copy there, let's show it to him and see if he recollects it.  And I want to ensure that he's familiar with the charges contained in the Indictment, and then I will want to know whether he wants me to read it to him or whether he will waive its reading here this afternoon.

Mr. Lefler:  Your Honor, Mr. Moore does not recall this particular document.  In light of that, if the Court would read the entirety of the document so that he has a clear understanding.

The Court:  I will.  If you will pass it up to me, I'll be happy to read it to you.  JA 81-82

At which point the Court read the entire document aloud.  Appellant was asked if he understood the nature of the charges.  He said he did.

The Court asked Appellant how he pled to the two counts in the Indictment and he responded, "I'm guilty, Your Honor."   After reviewing a factual basis for his plea, the Court found the Appellant to be fully competent and capable of entering an informed plea.  It found Appellant's plea was voluntary and that he

understood the Constitutional and other legal rights he gave up by pleading Guilty. The Probation Officer was Ordered to conduct a Pre-sentence Investigation and to prepare a Pre-sentence Report.  The Court deferred acceptance of Ryan Moore's plea until it had an opportunity to review the Pre-sentence Report.  JA 84

The Probation Officer advised the Court in Appellant's Pre-sentence Report that Ryan Moore believed he could benefit from a mental evaluation to determine his current mental health needs and appropriate treatment.  JA 247  The report included his history of drug usage which began at age 14 with marijuana and escalated to one gram a day of cocaine by the time he was 22.  He reported that he curtailed his use of cocaine when his third child was born in 2005.  In 2008 he began snorting and ingesting pills of oxycodone.  He was taking 10 to 12 pills a day until his auto accident and subsequent arrest. JA 248

The Probation Officer additionally reported Appellant used Ecstasy every weekend for one year beginning in 1999.   He participated in Court Ordered substance abuse treatment in Tampa, Florida (Drug Abuse Comprehensive Coordinating Office) from June 2000 through September 2000.  On January 15, 2013, the day of his arraignment, Ryan Moore tested positive for cocaine.  On February 1, 2013 he tested positive for morphine. JA 249

Appellant's Sentencing Hearing took place on October 17, 2013.   No additional discussion occurred regarding Appellant's competence to enter into his

written plea agreement with the Government or his competence to enter his plea to the Court on May 30, 2013.

The Court reviewed Government's Objection to the Probation Officer's finding that Appellant qualified for a two level reduction under the Guidelines for Count One pursuant to U. S. S. G. §5C1.2(a)(4) because he was not an organizer, leader, or supervisor of the drug distribution charged in the Indictment, The Government argued he was an "…organizer, leader, manager or supervisor of both the drug and money laundering charged in the Indictment. They sought to enhance the Guidelines four levels because, they argued, the criminal activity involved at least five people. (U.S.S.G. §3B1.1(a)) JA 165-170

Appellant objected to the two level increase recommended by the Probation Officer to Appellant's Guideline on Count Two of the Indictment because he was an organizer, leader or supervisor of the money laundering charged. He argued the requisite fifth person was not included in the conspiracy described in the Indictment and therefore the enhancement triggered by U.S.S.G. §3B1.1(a) did not apply.

The Court found that no "organizer" enhancement should apply to the charge in Count One of the Indictment. It held that a two level enhancement to Count Two of the Indictment was appropriate in that Appellant was an organizer, leader, or supervisor of the money laundering charged. JA 165-170  The Court

recalled that it deferred acceptance of the parties' plea agreement until it reviewed the Pre-sentence Report. "At this time, having had that opportunity, I do accept the Plea Agreement." JA 171   The Court then orally reviewed the Probation Officer's report of Appellant's significant history of drug addiction culminating in the car accident in 2013 which left him with various life threatening injuries and a brain injury which resulted in him being in a coma for one to two weeks. The Court further reviewed Appellant's history of mental illness and that "…he believes he could benefit from a mental health evaluation and appropriate medical treatment." JA 184-187

When asked if Ryan Moore wished to address the Court, his counsel answered that he did not, but, I believe he had forwarded a letter to the Court previously and he'll rest with that." JA 188[7]

Appellant was sentenced to serve a term of 168 months, two terms of Supervised Release of three years running consecutively and a forfeiture of $330,000. No fine was imposed, nor was restitution Ordered. The Court recommended that Appellant undergo a psychological evaluation and receive treatment necessitated by the evaluation. JA 193

The Court advised Appellant that he "may" have the right to Appeal in light of the Waiver he had signed and warned him that, if he wished to Appeal, he was

---

[7] This was a second letter sent to the Judge by Appellant. It does not appear in the Court record.

required to file a written Notice of Intent to Appeal within 14 days of entry of the Final Judgment in his case.  JA 193

The Court's Final Judgment was entered on October 21, 2013.  JA 197-202

On December 23, 2013, Appellant wrote the Clerk of the Court asking if a Notice of Appeal had been filed in his case.  He stated that he wished to file an Appeal but had not been apprised as to whether a Notice had been filed.  JA 203. On January 9, 2014 the Court substituted Appellant's current counsel for his trial counsel.    JA 205

## SUMMARY OF THE ARGUMENT

The record below does not provide a showing the Court adequately examined or required proof that Appellant Ryan Moore was legally competent to enter the guilty plea which he entered.  The Court erred when it failed to examine or require proof of his competency after a reasonable doubt arose regarding his state of mind.

Counsel for Appellant was ineffective when he presented no records from the Florida hospital which provided treatment for the brain injury Appellant suffered or from the Florida Mental Health facilities which treated Appellant before and after his accident.

## STANDARD OF REVIEW

In appeals from judgments and sentences imposed by the United States District Court, 18 U.S.C. §3742(e)  requires a Circuit Court of Appeals to grant "due deference" to the findings and conclusions of the District Court and the standard of review depends on the nature of the issues presented.  Issues involving purely legal questions relating to the proper application of the United States Sentencing Guidelines are required reviewed de novo (United States v. Hall, 977 F.2d 861 (4th Cir. 1992).  Issues involving purely factual determinations are reviewed by the clearly erroneous standard.  United States v. Daugherty, 874 F.2d 213 (4th Cir. 1989)  Issues presenting mixed questions of fact and law are reviewed under an intermediate standard with greater deference being afforded the District Court where the factual determinations are relatively more important than the legal conclusions and lesser deference being afforded where the legal conclusions are relatively more important.  id.

Appellant contends the Court's decision regarding the entry of his Guilty Plea should be reviewed de novo and the District Court's ruling given no deference due to the fundamental nature of the Constitutional protections he surrendered and the plain error revealed on the record.  Johnson v. United States, 520 U.S. 461, 466-467 (1997)

Whether the failure of Appellant's counsel to investigate for presentation evidence regarding Appellant's state of mind before advising him to plead guilty constitutes ineffective assistance of counsel is a mixed question of fact and law that this Court reviews de novo.  United States v. Murray, 176 F.3d 476 (4th Cir. 1999), Griffen v. Warden, 970 F.2d 1355, 1357 (4th Cir. 1992)

## LEGAL ARGUMENT

### I.

### FUNDAMENTAL FAIRNESS AND DUE PROCESS REQUIRE STRICT ADHERENCE TO RULE 11 PROCEDURES BY THE COURT IN ACCEPTING A GUILTY PLEA

### A.

### Guilty Plea Results In Loss Of Constitutional Protection Rights

A Defendant forfeits his most fundamental Constitutional rights when he enters a plea of Guilty to the charge against him.  The most elemental of these is the right to a trial by jury and the rights attendant to that which ensure the promise of the Constitution to have the ultimate facts in his case decided by twelve of his peers.  The gravity of the Defendant's decision to waive these rights places a heavy burden on the District Court to utilize all the tools available to it to determine that a plea is knowing and voluntary.

17

A guilty plea has been described as "…perhaps the most devastating waiver possible under our Constitution."[8] and the obligation of the trial court to monitor the Constitutional rights of a Defendant "…is not to be discharged as a mere matter of rote, but with sound and advised discretion. <u>Patton v. United States</u>, 281 U. S. 276, 312, 74 L.Ed. 854, 50 S. Ct. 253 (1930) <u>United States v. Truglio</u> 493 F.2d 574 (4th Cir. 1974)

A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. (footnote omitted)  For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege." <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938) Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.  (Footnote omitted) <u>McCarthy v. United States</u> 89 S. Ct. 1166, 394 U. S,. 459, 466-467, 22 L.Ed 2d 418 (1969)  Consequently, in order for a waiver to be valid under the due process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege' <u>McCarthy</u> Id. (quoting <u>Johnson v. Zerbst</u>, 304 U. S. 464, 82 L.Ed. 2d 1461 58 S. Ct. 1019 (1938)

---

[8] Stewart, J., concurring <u>Dukes v. Warden</u>, 406 U. S. 250, 258, 32 L.Ed. 2d 45, 92 S. Ct. 1557 (1972)

In the Appellant's case, his plea specifically provided that he "…knowingly and voluntarily waives the right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U. S. C. §3742, so long as the sentence is below or within the Sentencing Guideline range to Offense Level 36 [and he] knowingly and voluntarily waives his right to challenge his guilty plea and his conviction resulting from this plea agreement … in any collateral attack including but not limited to a motion brought under 28 U. S. C. §2255." JA 127[9]

It would appear that the District Court's review of Appellant's Guilty Plea terminated any future right to be heard.

## B.

### Because Of The Loss Of Constitutionally Protected Rights It Is The Court's Duty To Ensure That A Guilty Plea Is Knowing And Voluntary

Rule 11 of the Federal Rules of Criminal Procedure is the procedure provided for the District Court which provides a framework the Court may follow in identifying the relevant factors for a knowing and voluntary guilty plea.  While

---

[9] Excepted from this waiver was Appellant's possible claim of Ineffective Assistance of Counsel.

the Courts may exercise some discretion in conducting the procedure, assumptions by the Court which are not grounded on recorded responses by a Defendant to inquiries by the Court, undermine the goals behind the Rule 11 procedure.  (See McCarthy id. at U. S. 22)

> Although the procedure embodied in Rule 11 has not been held to be Constitutionally mandated[10] it is designed to assist the District Judge in making the Constitutionally required determination that a defendant's plea is voluntary.[11]  Second, the rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination.  Thus, the more meticulously the Rule is adhered to, the more it tends to discharge, or at least to enable more expeditious disposition of the numerous and often frivolous post – conviction attacks on the Constitutional validity of guilty pleas. Footnote omitted. McCarthy, id. U. S. at 465

---

[10] See Wady v. Heer, 384 F.2d 789 (6th Circ. 1967)

[11] See, eg Machi Broda v. United States, 368 U. S. 487, 493 (1962) Van Moltke v. Gillies, 332 U. S. 708 1948

## II.

## IT IS THE DUTY OF THE COURT TO DETERMINE WHETHER THE ACCUSED IS COMPETENT TO ENTER A KNOWING AND VOLUNTARY GUILTY PLEA

### A.

### The Court's Duty Is Spelled Out In Case Law and Procedural Rules

### 1.

### Case Law Requires Evidence On The Record That A Defendant Was Competent To Enter A Knowing And Voluntary Plea Of Guilty

Before a court may accept a guilty plea, it must ensure that the defendant is competent to enter the plea. See <u>Godinez v. Moran</u>, 509 U. S. 389, 400 (1993) The Court must also determine that the plea is knowing and voluntary. See id. <u>United States v. Damon</u>, 191 F.3d 561 (4th Cir. 1999)[12]

<u>Damon</u> recognizes that the Court must be allowed some flexibility, but warns that if the Defendant's answers to the Court indicate the need for clarification, the Judge must conduct the necessary follow-up to clarify on the record. "When an answer raises question about the Defendant's state of mind, the

---

[12] The <u>Damon</u> case involved the Court's failure to inquire regarding the effect on the defendant of drugs which he advised the court he had ingested to treat his depression.

Court must broaden its inquiry to satisfy itself that the plea is being made knowingly and voluntarily." id.

## B.

### The Federal Rules Of Criminal Procedure Require The Court To Ensure A Defendant's Plea Is Knowing And Voluntary

The Federal Rule provides "Before accepting a plea of guilty . . . the Court must address the defendant personally in open court and determine the plea is voluntary and did not result from force, threats, or promises (other than promises in a Plea Agreement)." Fed. R. Crm. Procd. Rule 11

## C.

### It Is The Court's Duty To Conduct Additional Testing Or Examination If It Has Any Reason To Question A Defendant's Competency To Enter A Guilty Plea

If there is any question as to a defendant's mental capacity to enter a guilty plea, an 18 U. S. C. §4241 examination should be Ordered and a hearing held prior to acceptance of the plea. Benchbook for U. S. District Court Judges, 6th Ed. Federal Judicial Center  March 2013, Sec. 1.12B Mental Competency in Criminal Matters

If the District Court has any doubt regarding the Defendant's competency, it must hold a hearing to resolve the ambiguity or question. (See <u>Pate v. Robinson</u>, 383 U. S. 375, 378-386 (1966))  "Accepting a guilty plea from a defendant when he is legally incompetent is, of course, a violation of due process." (cites omitted) <u>United States v. Damon</u>, supra.

> It is contradictory to argue that a defendant may be incompetent and yet knowingly or intelligently "waive" his right to have the Court determine his competency to stand trial. <u>Pate v. Robinson</u>, supra at Pg. 384[13]

## III.

### THE COURT FAILED TO FULLY INQUIRE REGARDING APPELLANT'S COMPETENCY TO ENTER A GUILTY PLEA

### A.

### Appellant Presented Sufficient Evidence To Raise A Reasonable Doubt Regarding His Competence To Enter A Guilty Plea

The evidence presented to the Court by the Defendant himself during the hearing to enter his guilty plea was sufficient to raise some doubt regarding his competency to enter a plea.

---

[13] The standard for competency to stand trial or enter a plea is the same. <u>Godinez v. Moran</u>, 509 U. S. 389 (1993)

The Court:    Have you recently been under the care of a doctor, psychiatrist, or other medical professional for any serious physical or emotional illness?

The Defendant:    Yes, I was, Your Honor.

The Court:    Tell me about that, please.

The Defendant:    I was involved in a car accident and I've got some brain injury. They removed my spleen and part of my liver. My lung collapsed and I've got multiple scars all over my body from it. And from the head injury, it's kind of hard for me to read and write.

The Court:    When was this accident, Mr. Moore?

The Defendant:    Three months ago.[14]

The Court:    Okay.

The Defendant:    The U. S. Marshals actually took me from the hospital into custody.

The Court:    Alright.

The Defendant:    So…

The Court:    Are you taking any type of medications as a result of that accident?

The Defendant:    I was, for pain, but when I arrived here, they stopped giving it to me. The only medication I take is Depakote and Blood Pressure medication.

The Court:    And how long have you been on those medications?

---

[14] The medical records obtained by the Probation Officer showed the accident had occurred two months before the hearing. JA 246

24

The Defendant:    A couple of years.

The Court:   During the time you have taken those, have you noticed any impact on your ability to reason and  to understand and to communicate?

The Defendant:    No.

The Court:   When was the last time you had any medicine at all?

The Defendant:    Today.

The Court:   And how long ago?

The Defendant:    This morning.

The Court:   Is your mind free and clear as you stand here at 1:34 this afternoon?

The Defendant:    Yes, Your Honor.

The Court:   And other than those two medicines, are you taking any alcohol, controlled substance or anything that might interfere with your ability to understand the proceedings here this afternoon?

The Defendant:    No, Your Honor.

The Court:   During the time that you have represented him, Mr. Lefler, have you had any reason whatsoever to question his competence?

Mr. Lefler:   Your Honor, I have not.  For the record, I will state that in meeting with Mr. Moore subsequent to this accident, I could note an affect in his speech and his, just his physical presentation.

Being aware of this, of the accident and the significant injuries that he received, I made it a point to try and make sure that he was, in my estimation, competent and able to understand our exchanges and provide me information.

And despite the, the difference that I can see in his presentation and especially, as I said, with the effect of his speech perhaps, I, I have found Mr. Moore capable of communicating with me, understanding what I've explained to him, asking him questions or giving me information, so that I do not have any significant concern that he is in any fashion unable to understand what he's doing in entering this plea or its terms. I'm satisfied that he is, has the wherewithal to do that.

The Court: I take it from everything that you have said thus far, when you communicate with him and you, when you question him, he is appropriately responsive. Is that correct?

Mr. Lefler: Yes, ma'am. JA 71-74

The Court made no other inquiry regarding Appellant's state of mind. Neither he nor his counsel was asked how his current mental and emotional state was affected by the reported bleeding on or in his brain following the car accident or the one to two week coma he experienced shortly before his arrest. Neither did the Court indicate she had any medical records which would answer such inquiries.

26

Later in the Plea Hearing Appellant advised the Court that he did not recall having previously seen the Indictment returned against him. His counsel explained:

Mr. Lefler:    Your Honor, Mr. Moore, I think perhaps as a result of some of his injuries, doesn't have a specific recollection of that. I will represent to the Court that Mr. Moore was provided a copy of the Indictment at the time of his initial appearance. And I believe against we were provided it in discovery. JA 81-82

Counsel presented no medical evidence of Appellant's state of mind, none was requested.

The Pre-sentence Investigation conducted and prepared by the Probation Officer reported evidence of drug addiction of the Appellant beginning at age 14 and escalating to 10 to 12 Oxycodone pills a day immediately before his auto accident. JA 248-250 She cited hospital and treatment records that Appellant had a history of Bipolar Disorder. A psychiatric consult was performed in the hospital following his accident, but the results were not made available to the Court. JA 247

Finally, the Probation Officer reported Ryan Moore believed he would benefit from a mental evaluation to determine his current mental health needs and appropriate treatment. JA 247

Appellant's Sentencing Hearing occurred on October 17, 2013, approximately four and one half months after his Plea Hearing. The Court made no further inquiry regarding his mental status at the time he entered into a Plea Agreement with the Government; at the time he entered his plea before the Court; or at the time of his sentencing.

**B.**

**The Court Failed To Conduct
Additional Testing Or Examination
When It Had Reason To Question The
Defendant's Competency To
Enter A Guilty Plea**

The Appellant advised the Court, in his response to inquiries during his Plea Hearing, of traumatic brain injuries he recently suffered which placed him in a coma for two weeks. He reported memory lapses confirmed by his counsel. Appellant now argues this was enough to raise a doubt regarding his competency to enter a plea. Added to this history was the Probation Officer's Report of a history of Bipolar Disorder. The Court, instead of making further inquiry, relied on assumptions and the representations of counsel to find the Appellant competent. This was not a sufficient basis for the finding. "It is too late in the day to permit a Guilty Plea to be entered against a defendant solely on the consent of the

defendant's agent- his lawyer." <u>Henderson v. Morgan</u>, 96 S. Ct. 2258, 426 U. S. 637, 650, 49 L.Ed.2 108 (1976))

Most of the colloquy at the Plea Hearing, as is typically the case, consisted of yes or no answers by the Appellant. This is not an adequate basis for the waiver of Constitutional rights occurring as a result of Appellant's plea, when the Court has been warned of possible mental or emotional stability. (See <u>United States v. Christensen</u>, 18 F.3d 822 (9th Cir. 1994) Appellant argues he presented sufficient evidence to raise a doubt that the injuries from which he continued to suffer created a defect in his competency which prevented him from entering a knowing and voluntary plea. The burden was on the Court to inquire further to determine his ability to enter the plea. This does not necessarily mean a Competency Hearing was required but at a minimum, would require that the Court obtain the results of the Psychiatric Evaluation conducted in the hospital which treated the Appellant for his brain injury. The Court simply failed to make an additional inquiry before or after accepting a Guilty Plea from him.

Appellant Moore argues that the Court's failure to establish that he was competent when he entered his plea invalidates the plea and the waiver of his Constitutional rights it contained, including the waiver of his right to file this Appeal.

## IV.

## APPELLANT ENTERED A GUILTY PLEA WITHOUT AN ADEQUATE SHOWING OF HIS COMPETENCY AND HIS PLEA MUST BE VACATED

### A.

### The Court's Error Was Plain On The Face Of The Record

The Court's failure to inquire further when Appellant's answers raised reasonable doubt regarding his competency was plain error.

> To establish a procedural incompetency claim, a defendant "need not demonstrate on appeal that he was in fact incompetent, but merely that the district court should have ordered a hearing to determine the ultimate fact of competency." United States v. Banks, 482 F.3d 733, 742 (4th Cir. 2007) United States v. General, 278 F.3d 389, 396 (4th Cir. 2002)

The foundation for Appellant's argument that the Court erred by proceeding with his plea after he showed reasonable doubt of his competency is clear on the face of the record and it is undisputed Fourth Circuit law.

**B.**

**Appellant's Guilty Plea Must Be Vacated
Because Of The Court's Error**

The Courts have considered the problems in attempting to go back in time to determine the competency of a defendant at the time of his Plea Hearing and fashioned different remedies.

> We thus conclude that prejudice inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of his plea. Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. McCarthy, supra at Pg. 472

> Since we do not think there could be a meaningful hearing on that issue [competency] at this late date, we direct the District Court, after affording the state another opportunity to put Robinson on trial on its charges, within a reasonable time, order him discharged. Pate v. Robinson, supra at Pg. 377-378

We reverse Truglio's conviction and remand his case to the District Court with directions to vacate Truglio's guilty plea and permit him to plead anew to the Indictment. <u>United States v. Truglio</u>, 493 F.2d 577 (4th Cir. 1979)

We therefore remand to the District Court for a determination of whether Damon's medication had the capability to affect his mental facilities sufficiently to render him incompetent to enter a guilty plea. …If Damon's medication did not have the capability of undermining the validity of his plea, the play may stand. Otherwise it should be vacated. <u>United States v. Damon</u>, supra.

Because the Court failed to ensure that the plea was voluntarily and knowingly entered as required by Fed. R. Crim. P. 11 – we vacate defendant's guilty plea. <u>United States v. Rossillo</u>, 853 F.2d 1062 (2d Cir. 1988)

We remand the case to District Court with instructions to grant the [Habeas Corpus] write unless the State trial court conducts a hearing within 60 days to determine whether Miles was competent at the time he plead guilty to the charges against him. <u>Miles v. Stainer</u>, 108 F.3d 1109 (9th Cir. 1997)

We find, however, that the failure to make on-the-record determination whether <u>Rossillo</u> was under the influence of any medication, and, if he had taken any medication, whether his plea was voluntary and knowingly offered constitute reversible error …Defendant's guilty plea cannot

stand, …therefore is vacated and the case is remanded to the District Court for further proceedings consistent with this opinion. <u>United States v. Rossillo</u>, 853 F.2d 1062 (2nd Cir. 1998)

Appellant's competency to enter a guilty plea was not established by the District Court and Fourth Circuit precedent requires that it must be vacated.

## V.

## IT IS CLEAR ON THE FACE OF THE RECORD THAT APPELLANT HAS BEEN DENIED EFFECTIVE COUNSEL

## A.

## Appellant Had A Right To Expect Effective Assistance From His Court Appointed Lawyers

The Appellant is entitled, as a matter of right, to the effective assistance of counsel.  The Sixth Amendment to the United States Constitution provides for "…assistance of counsel for his defense."  (U. S. Const. 6A)  The Court has recognized the fundamental nature of this right.  "The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversarial process."  <u>Kimmelman v. Morrison</u>, 477 U. S. 365, 374 (1986)

33

## B.

### The Failure Of Appellant's Counsel To Investigate His Competency Was Ineffective Assistance Of Counsel

Appellant Ryan Moore argues that it is clear on the face of the record that his counsel failed to adequately investigate and raise questions regarding his competency for review by the District Court.  As the Supreme Court recognized in Strickland v. Washington, 466 U. S. 668, 686 (1984), "counsel bears a duty to make a 'reasonable' investigation of the law and facts in his client's case." Strickland, id.  Additionally, the ABA Standards Relating to the Administration of Criminal Justice provide:

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction.  The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities.  The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.  ABA Stnd. Relating to Admn. of Crim. Justice.  Standard 4—4-1

Appellant's right to effective assistance of counsel confers a duty on his counsel to conduct an adequate investigation of his case before advising his client whether to enter a plea or proceed to trial.  There is no evidence on the record that

34

this occurred.  Lacking any substantive evidence of the strategy employed by counsel in advising Appellant to enter a plea of guilty, it cannot be shown that adequate investigation was conducted by counsel.  McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992)  "[W]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." id at 1262-63.

The failure to properly investigate and present a defense is not a strategic decision, but is an example of ineffective assistance of counsel.  The Fourth Circuit Court has established the standard which permits a claim of Constitutionally ineffective investigation by counsel to be argued on direct appeal "…only if the lawyer's ineffectiveness conclusively appears from the record."  United States v. Baldovinos, 434 F.3d 233, 239 (4th Cir.  2006)

The record of failure by his counsel to investigate the mental and emotional effect of Appellant's recent traumatic injuries to his cognitive ability before advising Appellant to plead guilty reflects inexcusable neglect of their duty and clearly falls below any objective standard of reasonableness.

The accepted standard for identifying ineffective assistance of counsel is found in Strickland, supra.  Counsel's assistance is deemed ineffective when (1) his performance was deficient under an objective standard of reasonableness, and (2) there is a reasonable possibility that, but for counsel's unprofessional errors, the

35

result of the proceedings would have been different,[15] or that "counsel's conduct so undermined the proper function of the adversarial process, that the trial cannot be relied on as having produced a just result." Strickland, id. (Also see Williams v. Taylor, 529 U. S. 362 (2000); Lockhart v. Fretwell, 506 U. S. 364 (1993) The Strickland test is thus used to determine whether counsel's performance ensured the fundamental fairness of the proceeding.

## C.

### The Ineffective Assistance Appellant Received From His Counsel Prejudiced Him

The United States Supreme Court has recognized a deprivation of Constitutional right in an ineffective assistance of counsel claim where the Defendant can show that his "…counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, id.

The record does not show that counsel obtained records from the Florida hospital where Appellant was treated for his brain injury and was evaluated by a

---

[15] The prejudice that must be shown need not be anything more than something as small as one additional day in jail. See Glover v. United States, 531 U. S. 198 (2001)

psychiatrist.    Neither did he present evidence from the Florida Mental Health facility which provided treatment for the Appellant.    These records might have established or resolved the reasonable doubt that Appellant argues existed regarding his competency at the time he entered his plea.    It would undoubtedly have influenced counsel in advising his client to plead guilty to a charge that resulted in a sentence of incarceration of 168 months.

In addition to the extremely lengthy sentence imposed on Appellant, his objectionable plea waived him of all the Constitutionally protected rights under Federal law he could otherwise claim, including his right to Appeal.    Appellant argues that these waivers were not made knowingly and voluntarily and should be vacated, along with his plea.

The United States Supreme Court has determined that when a lawyer's failure to act deprives his client of "a substantive or procedural right to which the law entitles him, the Strickland requirement to show prejudice has been met." Williams v. Taylor, supra at 392.

## CONCLUSION

The Court should, for the foregoing reasons, vacate Appellant's guilty plea, the waivers contained in his plea and the sentence resulting from his plea and remand this case for a new trial.

37

## REQUEST FOR ORAL ARGUMENT

The Appellant respectfully requests the opportunity to present oral argument.

RESPECTFULLY SUBMITTED,

 /s/
JANE MORAN, ESQ
Counsel for Ryan D. Moore
WV State Bar No. 2615
P. O. Box 221
Williamson, WV  25661
(304) 235-3509
janemoran3@hotmail.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This brief complies with the Type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

    The word count of this brief is <u>7,755</u>.


2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word, Times New Roman, 14 point</u>.


March 13, 2014


/s/_____
JANE MORAN, ESQ

## CERTIFICATE OF SERVICE

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this March 13, 2014, filed the required copies of the foregoing Brief of Appellant in the Office of the Clerk of the Court, via hand delivery and have electronically filed the Brief of Appellant using the Court's CM/ECF system which will send notification of such filing to the following counsel:

Candace H. Bunn
OFFICE OF THE U.S. ATTORNEY
Southern District of West Virginia
Room 4000
300 Virginia Street, East
Post Office Box 1713
Charleston, WV 25326-1713
(304) 345-2200
haley.bunn@usdoj.gov

March 13, 2014

/s/_____
JANE MORAN, ESQ